# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
November 9, 2021 Session

## STATE OF TENNESSEE v. JALEAN ROBERT WILLIAMS AND MARKEIL LINSKEY WILLIAMS

**Appeal from the Criminal Court for Davidson County**
**No. 2016-B-1164     Cheryl A. Blackburn, Judge**

———————————————————

### No. M2020-01391-CCA-R3-CD

———————————————————

A Davidson County grand jury indicted the defendants, Jalean Robert Williams and Markeil Linskey Williams, for one count of premeditated first-degree murder and one count of felony murder. Per a negotiated plea agreement, the defendants pled guilty to one count of second-degree murder for which they each received a sentence of thirty years to be served at 100%. The defendants also agreed to have the trial court determine whether their sentence in the instant matter would be served concurrently or consecutively to a sentence of life in prison plus fourteen years they were currently serving in Case No. 2017-A-296. After a sentencing hearing, the trial court imposed consecutive terms. On appeal, the defendants contend the trial court abused its discretion in imposing consecutive terms. After a thorough review of the record, the applicable law, and the arguments of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jay Umerley, Nashville, Tennessee (on appeal) and Nick McGregor, Nashville, Tennessee (at trial), for the appellant, Jalean Robert Williams, and David Collins, Nashville, Tennessee, for the appellant, Markeil Linskey Williams.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Megan M. King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Facts and Procedural History*

This case arises out of the September 3, 2015 shooting death of the victim, Cianan Napier, during an apparent robbery. Brothers and co-defendants, Jalean Robert Williams and Markeil Linskey Williams[1] were indicted for first-degree premeditated murder (Count 1) and felony murder (Count 2). Another co-defendant, Shirin Sidiqi-Khwaga, was also charged in the indictment as an accessory after the fact, but her case was severed from that of her co-defendants.

On January 10, 2020, the defendants pled guilty to the lesser charge of second-degree murder. During the plea hearing, the State recited the following facts as the bases for the defendants' convictions:

> Your Honor, in case number 2016-B-1164 had this case gone to trial the State's proof would have been that on September the 3rd, 2015 in Davidson County a 911 call was received about a shots-fired.
>
> When officers arrived at the location, which was 906 Patricia Drive, they located the victim in this case, Mr. Cianan Napier, who was found dead from multiple gunshot wounds to his back. His shoes were missing. And his pockets were turned inside out. Witness statements placed Jalean [Williams] and Markeil Williams with Mr. Napier prior to his homicide. Shirin Khwaga drove the defendants away from the scene. They were gone prior to police arrival and would not come back when the police called and asked them to.
>
> On September the 5th, the defendants were taken into custody by police. And Jalean Williams was in possession of a pistol, which testing confirmed to be the weapon that killed Mr. Napier.
>
> And those would be the facts in this case.

As part of their plea, the defendants each agreed to a sentence of thirty years to be served at 100%. They also agreed to allow the trial court to determine whether their thirty-year sentence in the instant matter should be served concurrently or consecutively to their life sentence in Case No. 2017-A-296.[2]

---

[1] Because the defendants share the same surname, we will refer to them by their first name. We mean no disrespect by this practice.

[2] In 2017, the defendants were convicted of murder, as well as several other crimes, relating to the September 4, 2015 robbery and shooting death of Kevin Ibara. The murder in that matter, took place the day after the murder in the instant matter. As a result of their convictions, the defendants each received a sentence of life imprisonment plus fourteen years. *State v. Jalean Robert Williams and Markeil Linskey Williams,* No. M2019-0230-7-CCA-R3-CD, 2021WL 4305899 (Tenn. Crim. App. Sept. 22, 2021), *perm. app. filed* (Tenn. Nov. 8, 2021).

A sentencing hearing was held on October 6, 2020. At the hearing, the State introduced the testimony of several members of the victim's family concerning the devastating effect of the defendants' actions on their family. Additionally, the State introduced the presentence reports prepared in the instant matter, the defendants' juvenile files, and the trial transcript and presentence reports from the defendants' prior case, Case No. 2017-A-296.

After the State submitted its proof, Defendant Jalean called Anthony Williams, the defendants' father, as a witness. Mr. Williams testified that he and the defendants' mother divorced when the defendants were young and that he was awarded custody of the defendants. At the time of the divorce, the defendants were "honor roll students and they participated in a lot of after school activities as far as team sports and debates and . . . things with school." However, the divorce was hard on the defendants causing their school work to "f[a]ll off." Defendant Jalean also presented the testimony of the defendants' "sister," Phyllis Beach. While Ms. Beach was not actually related to the defendants, they acted as siblings, and Ms. Beach testified as to how the defendants' actions and current incarceration had impacted the "family." Additionally, Defendant Jalean called Mr. Doug Irwin. Mr. Irwin initially met Defendant Jalean when the defendant was in juvenile detention. Since that time, Mr. Irwin has been mentoring Defendant Jalean. Mr. Irwin testified concerning the defendant's attempts to improve himself while incarcerated such as obtaining his GED and being involved in several other programs. The final proof offered by Defendant Jalean was his allocution. After reading his statement into the record, a copy of Defendant Jalean's allocution was entered as an exhibit to the hearing.

At the conclusion of the sentencing hearing, the trial court noted that the sentencing act outlines the purposes and principals to be considered by the sentencing court, including the evidence presented at trial and during the sentencing hearing; the presentence reports; the nature and characteristics of the criminal conduct; statistical information provided by the Administrative Office of the Courts; the risk assessment; and, in the case of Defendant Jalean, his allocution. The trial court also noted that in reviewing the nature of the offense, the court can "look behind" the plea agreement and consider the true nature of the offense committed. Furthermore, though the length of the sentence was part of the plea agreement, the trial court reviewed the enhancement and mitigating factors submitted by the parties as part of the trial court's overall determination concerning consecutive or concurrent sentences.

When discussing the appropriateness of concurrent or consecutive sentences, the trial court noted that simply being convicted of two murders does not automatically require consecutive sentences. Rather, the court must make specific findings in support of imposition of consecutive terms. The trial court then concluded, however, that consecutive

sentences were appropriate after finding both defendants to be dangerous offenders whose behavior indicated little or no regard to human life and who had no hesitation about committing a crime in which the risk to human life is high. In support of this finding, the trial court stated,

> Well, clearly, in this particular situation, we have the first homicide where you have a good friend [the victim], and there is testimony that, well, first of all, that [the victim] ran out of the house, and the words that the defendants gave when Defendant Markeil [called 911], I believe that was [Defendant Markeil] that [claimed the victim] had killed himself, [the victim] had killed himself. Well, that wasn't accurate. [The victim] was shot three times in the back. And then that was the day before . . . [the next day] Ms. Khwaga and the two defendants go over to the house where the other victim (Case No. 2017-A-296), when they go into the house, there's a drug deal and then there is an execution and a series of gunshots throughout that, for which a witness hears it and then sees [the defendants] running away; and then [the defendants] get into the situation with the police where they've taken the drugs and guns from that house, and they're caught with all that. So those are the situations where we have somebody who on one day kills somebody and then [the next day kills] another; and both of these are extremely, extremely dangerous situations.

> So, . . . as far as consecutive sentences, it is an offender who is dangerous and the aggregate term reasonably relates to the severity of the offenses and it is necessary in order to protect the public from further serious conduct.

In addition to finding Defendant Jalean to be a dangerous offender, the trial court also found consecutive sentences were appropriate because Defendant Jalean was on probation at the time of the murders.

Based on these findings, the trial court order the defendants' thirty-year sentences in the instant matter to be served consecutively to their sentences of life imprisonment plus fourteen years in Case No. 2017-A-296. This timely appeal followed.

### *Analysis*

On appeal, the defendants contend the trial court erred in imposing consecutive terms. More specifically, they claim the evidence preponderates against the trial court's determination that there is a need to protect society from the defendants. The State submits the trial court did not abuse its discretion, and therefore, the defendants' sentences are presumed reasonable and should be affirmed. We agree with the State.

This Court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing Tenn. Code Ann. §§ 40-35-103, -210; *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* Tenn. Code Ann. §§ 40-35-102 (2019), 41-1-126 (2019) (validated risk and needs assessments).

The abuse of discretion with a presumption of reasonableness standard also applies to the imposition of consecutive sentences. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). A trial court has broad discretion in determining whether to impose consecutive service. *Id.* A trial court may impose consecutive sentencing if it finds by a preponderance of the evidence that one criterion is satisfied in Tennessee Code Annotated section 40-35-115(b)(1)-(7) (2019). In determining whether to impose consecutive sentences, though, a trial court must ensure the sentence is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4) (2019); *see State v. Desirey*, 909 S.W.2d 20, 33 (Tenn. Crim. App. 1995).

When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. *State v. Lane*, 3 S.W.3d 456, 460-61 (Tenn. 1999); *State v. Wilkerson*, 905 S.W.2d 933, 937-38 (Tenn. 1995).

In imposing consecutive sentences in the instant matter, the trial court found the defendants to be dangerous offenders whose behavior showed little regard for human life and who had no hesitation to commit the offenses when the risk to human life was high. *See id.* § 40-35-115(b)(4) (2019). In support of his findings, the trial court noted the defendants committed two execution-style murders in back to back days. In the instant matter, the victim was a friend of the defendants, and they shot him in the back three times as he attempted to flee the defendants' attempt to rob him. Additionally, when the defendants called the police, they disingenuously claimed the victim, who had been shot in

the back three times, committed suicide. The next day, the defendants turned what appeared to be a drug deal into a robbery and another execution-style murder. Furthermore, shortly after committing the second murder, the defendants attempted to evade police in both a motor vehicle and on foot before being apprehended in possession of the drugs and guns they stole from the second murder scene and the murder weapon from the first murder. Based on these actions, the trial court determined there was a need to protect the public against further criminal conduct by the defendants and that the consecutive terms reasonably related to the severity of the two execution-style murders committed by the defendants. The record supports the trial court's determination that the defendants are dangerous offenders. Therefore, the trial court did not abuse its discretion and the defendants' sentences are presumed reasonable.

In addition to a broad challenge to the trial court's finding and application of the "dangerous offender" classification, both defendants specifically argue that consecutive terms are not reasonably necessary to protect the public from future criminal acts, given the advanced age at which they would be paroled on their life sentences. However, this Court has routinely held that "trial courts should consider whether or not consecutive sentencing is 'necessary to protect the public against further criminal conduct by the defendant,' as required by *Wilkerson,* 905 S.W.2d at 939, by gauging the defendant's level of dangerousness as the defendant stands at the time of sentencing." *State v. Andrew Mann*, No. E2010-00601-CCA-R3-CD, 2012 WL 184157, at \*19 (Tenn. Crim. App. Jan. 23, 2012), *perm. app. denied* (Tenn. June 20, 2012); *see also State v. Eric Ricardo Middleton,* No. W2010-01427-CCA-R3-CD, 2011 WL 5573730 (Tenn. Crim. App. Nov. 14, 2011) (upholding a twenty-five-year sentence ordered to be served consecutive to a mandatory life sentence), *perm. app. denied* (Tenn. April 12, 2012); *State v. Joshua Lee Brown,* No. M2010-00437-CCA-R3-CD, 2011 WL 4489410 (Tenn. Crim. App. Sept. 28, 2011) (upholding a twenty-year sentence ordered to be served consecutive to a sentence of life without the possibility of parole) *perm. app. denied* (Tenn. Feb. 16, 2012); *State v. Randy Parham,* No. W2009-02576-CCA-R3-CD, 2010 WL 5271612 (Tenn. Crim. App. Dec. 10, 2010) (upholding a sentence of six years ordered to be served consecutive to a sentence of fifteen years to be served at 100%, both of which were ordered to be served consecutive to a sentence of twenty-five years to be served at 100%) *no perm. app. filed*. At the time of the sentencing hearing in the instant matter, the defendants stood convicted of two execution-style murders which they had committed within a twenty-four-hour period. Clearly, the record supports the trial court's determination that it was necessary to protect the public from the defendants' future criminal actions.

Finally, though Defendant Jalean focuses his argument on the trial court's finding of a dangerous offender and the overall length of his sentence, we note the trial court also found he committed the offense while on probation. *See id*. at (b)(6). This factor is also

supported by the record.  Accordingly, the trial court did not abuse its discretion, and Defendant Jalean's sentence is presumed reasonable.

### *Conclusion*

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____

J. ROSS DYER, JUDGE